USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/4/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ROBERT ROMANO,

                        Plaintiff,

         -against-

SANTANDER HOLDINGS USA, INC., et al.,

**MEMO ENDORSED**     Defendants.
-------------------------------------------------------------X

15-CV-7387 (CM)(SN)

**REPORT AND RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/27/18

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE COLLEEN MCMAHON:

    Plaintiff Robert Romano, pro se, brings this action alleging that his former employer, Defendant Santander Bank, N.A., and its parent company, Defendant Santander Holdings USA, Inc., retaliated against him in violation of the whistleblower provisions of the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Consumer Financial Protection Act. ECF No. 4 ¶¶ 1, 11, 16. On December 6, 2017, the parties signed an agreement entitled Confidential Terms of Settlement (the "Agreement"), which outlines terms for settling the claims in this matter. First Idrissa Aff. Ex. 4. On December 27, 2017, Defendants moved to enforce the Agreement. Defendants also requested that the Court seal their motion, the parties' briefs, and various supporting materials, which the Court granted on a provisional basis. ECF Nos. 116, 122, 127. The Honorable Colleen McMahon subsequently referred the motion to enforce the Agreement to me for a report and recommendation. ECF No. 118. I recommend granting Defendants' motion to enforce the Agreement and dismiss the case. In addition, I order the unsealing of the motion and most of the accompanying materials.

9/27/2018
No objections have been filed to the Report and Recommendation. The court adopts it as its primary recommendation. The Clerk is directed to grant the motion at ECF No. ___, to unseal as directed by Judge Netburn, and to dismiss the case.

                                            /s/ Colleen McMahon
                                              USDJ

Copies mailed/faxed/handed to counsel on 9/27/18

**BACKGROUND**

The discovery process in this matter has been long and drawn out, largely due to Romano's repeated refusals to comply with various Court orders. See ECF Nos. 73, 78, 81, 86, 101. On September 25, 2017, in an attempt to bring the discovery process to a close, the Court tentatively scheduled Romano's deposition for November 17, 2017. ECF No. 86. The day before the scheduled deposition, Romano informed the Court that a close family friend was experiencing a medical emergency that would interfere with the deposition. To accommodate Romano, Defendants agreed to reschedule Romano's deposition for November 21, 2017, and the Court ordered Romano to appear on that date. See ECF No. 101. Romano subsequently failed to appear for the deposition on November 21, 2017. Id. After a show cause hearing, the Court allowed Romano's deposition to be rescheduled one last time—for 10:00 a.m. on December 6, 2017—and reluctantly extended the discovery deadline yet again. See ECF No. 105. The Court warned Romano that his deposition would "not be rescheduled, postponed, or delayed." Id.

In the days leading up to Romano's deposition, the parties exchanged several e-mails regarding the terms of a potential settlement, and in the evening on December 5, 2017, defense counsel sent Romano a proposed settlement agreement. First Idrissa Aff. Exs. 1–2. Later that evening, Romano responded with a few concerns regarding the proposal. Id. Ex. 3. The following morning, the parties continued their settlement discussions via e-mail. Id. At 9:03 a.m., however, defense counsel e-mailed Romano, stating, "if there are other changes you want to request and/or you need more time to review the agreement, we will need to proceed with you[r] deposition this morning." Id. After Romano continued to push for further settlement discussions, defense counsel responded at 9:24 a.m., "I'm happy to discuss the agreement with you but I have to plan to proceed with your deposition in the event we cannot come to an agreement

2

quickly. . . . We can also take your deposition and continue discussions on the agreement afterwards." Id.

Romano then sent defense counsel an e-mail claiming that he did not previously understand that a signed agreement would be necessary to adjourn the deposition. Id. Defense counsel replied, "I never told you that I would not require a signed agreement to adjourn the deposition. . . . The Court has ordered your deposition to take place today. There is no way I could not proceed with your deposition unless we had an agreement concluding the matter." Id. At 10:20 a.m. and again at 11:55 a.m., Romano e-mailed defense counsel indicating that he would come to the deposition. Id. At 1:25 p.m., defense counsel again e-mailed Romano:

> Your deposition was supposed to begin at 10 am. You told me at 11:55 you would be here shortly. If you are not here by 1:45 p.m. I will have to let the Court reporter and videographer go and inform the Court that you failed to appear and request dismissal of your case.

Id. Approximately ten minutes later, Romano arrived at the deposition. First Idrissa Aff. ¶ 10.

At Romano's request, defense counsel then agreed to continue the settlement discussions, but she informed Romano that the deposition would need to proceed if the parties were unable to reach an agreement quickly. Id. ¶ 11. Romano actively participated in the ensuing settlement discussions and made specific requests for revisions to Defendants' proposed settlement terms. Id. ¶ 12. Defendants agreed to some of Romano's proposals but declined to accept others. Id. ¶¶ 12–13. Defense counsel then drafted the Agreement, which memorialized the agreed-upon settlement terms, and gave it to Romano to review. Id. ¶ 13. After indicating that the Agreement was acceptable, Romano signed the Agreement, with a notary witnessing his signature. Id. ¶ 14. Relying on the Agreement, the parties did not proceed with the deposition. Id. ¶ 15.

The Agreement states that it is "an outline of the material terms of settlement and a more complete written settlement agreement shall be executed by the parties." Id. Ex. 4 ¶ 11. The

Agreement also indicates that Romano "will be given 7 business days to review the final written settlement agreement with an attorney and/or the pro se Legal Clinic at the Southern District of New York." Id. Ex. 4 ¶ 10. On December 7, 2017, defense counsel e-mailed Romano a proposed draft of the more formal written settlement agreement. Id. Ex. 5. A few days later, on December 13, 2017, defense counsel received an email from Patricia L. Boland, Esq., an attorney at Frank & Associates, P.C., stating that her firm had been retained to represent Romano and that Romano "rejected Defendants' offer to settle." Id. Ex. 6. Defense counsel later spoke with Ms. Boland and her colleague, Neal M. Frank, Esq., who apparently asserted that the Agreement was unenforceable because it gave Romano time to review the more formal written settlement agreement and because Romano was allegedly coerced into signing the Agreement. Id. ¶ 18. On December 20, 2017, defense counsel received another e-mail from Mr. Frank informing her that Frank & Associates, P.C. was unable to finalize a retainer agreement with Romano and would not be representing him. Id. Ex. 7.

Romano did not execute the more formal written settlement agreement that defense counsel sent him. First Idrissa Aff. ¶ 20. Therefore, on December 27, 2017, Defendants filed a motion to enforce the Agreement. Defendants also requested that their motion, the parties' briefs, and the parties' supporting materials be sealed or, in the alternative, redacted. The Court granted Defendants' requests to seal the documents on an interim basis. ECF Nos. 116, 122, 127. The Court also indicated that it would revisit its rulings allowing documents to be filed under seal when it issued its decision on the motion to enforce the Agreement. Id.

4

## DISCUSSION

### I. Motion to Enforce the Agreement

"A settlement agreement is a contract that is interpreted according to general principles of contract law."[1] Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). To form a valid contract, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004) (quoting Louros v. Cyr, 175 F. Supp. 2d 497, 512 n.5 (S.D.N.Y. 2001)). "Once entered into, the contract is binding and conclusive. When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that . . . choice simply because his assessment of the consequences was incorrect." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) (citations omitted). In opposing Defendants' motion, Romano argues that (A) the attorneys who communicated with Defendants regarding the Agreement did not represent him, (B) Romano never assented to the Agreement, and (C) defense counsel "attempted to force" Romano to sign the Agreement. Pl.'s Resp. 1–2.

#### A. Attorneys from Frank & Associates, P.C.

Romano argues that Defendants have moved to enforce the Agreement "based on hearsay from Attorneys that Defendant[s] admit had never filed a notice of appearance on [Romano's] behalf in this instant matter." Id. at 1. Defendants acknowledge that Romano is not represented by attorneys from Frank & Associates, P.C. Defs.' Reply 2. Defendants merely describe their communications with those attorneys in order to explain how Defendants initially learned that Romano objected to the Agreement. Id. In his opposition brief, Romano states that he objects to the Agreement and does not believe it is enforceable. Pl.'s Resp. 5. Thus, any communications

---

[1] It is "an open question in the Second Circuit whether the enforceability of a settlement agreement in a federal action [is] to be determined under state or federal law." Silas v. City of New York, 536 F. Supp. 2d 353, 355 (S.D.N.Y. 2008) But "there is no material difference between the applicable state law or federal common law standard." Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir. 1997)

5

between defense counsel and attorneys at Frank & Associates, P.C. are inconsequential to the dispute at hand.

## B. Assent to the Terms

Parties negotiating settlements "often enter into preliminary agreements, which may provide for the execution of more formal agreements." Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998). "Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." Id. at 548. "In some circumstances, however, preliminary agreements can create binding obligations." Id. One such circumstance is when the parties enter "a fully binding preliminary agreement"; that is, they "agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." Id. "Such an agreement is preliminary only in form—only in the sense that the parties desire a more elaborate formalization of the agreement." Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F. Supp. 491, 498 (S.D.N.Y. 1987). "A binding preliminary agreement binds both sides to their ultimate contractual objective in recognition that, 'despite the anticipation of further formalities,' a contract has been reached." Adjustrite, 145 F.3d at 548 (quoting Teachers Ins., 670 F. Supp. at 498).

"In deciding whether a preliminary agreement is binding, '[t]he key, of course, is . . . whether the parties intended to be bound.'" Jian Wang v. IBM Corp., No. 11-CV-2992 (VB), 2014 WL 6645251, at *3 (S.D.N.Y. Oct. 7, 2014) (first alteration in original) (quoting Adjustrite, 145 F.3d at 548–49), aff'd, 634 F. App'x 326 (2d Cir. 2016). "When a preliminary agreement is reduced to a writing signed by the parties or their representatives, the plain language of the agreement is the best evidence of the parties' intent." Id.; see also Khalian v. Skintej, No. 15-

CV-1318 (LTS)(KNF), 2016 WL 10566660, at *2 (S.D.N.Y. Dec. 2, 2016) (enforcing a handwritten preliminary agreement against a pro se plaintiff because the plain language "clearly show[ed] the parties' intent to be bound by the agreement and settle the litigation"); McLeod v. Post Graduate Ctr. for Mental Health, No. 14-CV-10041 (ALC)(JCF), 2016 WL 6126014, at *2 (S.D.N.Y. Sept. 30, 2016) (finding that a pro se plaintiff intended to be bound by a preliminary agreement because the agreement stated that the parties had "reached an agreement to settle the above-referenced lawsuit"), report and recommendation adopted, No. 14-CV-10041 (ALC), 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016).

In this case, the plain language of the Agreement unequivocally shows the parties' intent to be bound and settle the litigation. The Agreement states that the parties "reached an agreement on December 6, 2017 to resolve Romano's claims currently pending in the Federal District Court for the Southern District of New York." First Idrissa Aff. Ex. 4. The Agreement then describes the "terms of the settlement, which will be documented in a more formal written agreement between the parties." Id. In addition, the Agreement states that "[a]ny party who breaches the Agreement agrees to pay counsel fees and costs to the other party in the event the other party is successful in an action to enforce the settlement agreement." Id. ¶ 9. These provisions demonstrate that the parties agreed upon the material terms of the settlement, the subsequent written agreement was simply intended to be a "more formal" version of the existing contract, and any party who breached the Agreement would pay the attorneys' fees and costs that the other party incurred enforcing it. Although the Agreement also provides that Romano "will be given 7 business days to review the final written settlement agreement with an attorney and/or the pro se Legal Clinic," it does not allow Romano to negotiate changes to the material settlement terms that were agreed upon by the parties and memorialized in the Agreement. Id. ¶ 10.

7

Beyond the express terms of the Agreement, the contemporaneous email between the parties makes clear that Romano's deposition would be adjourned only if the parties had entered into a binding settlement agreement. First Idrissa Aff. Ex. 3. Following the negotiations, the parties signed the Agreement, and defense counsel did not depose Romano. First Idrissa Aff. ¶¶ 11–15. Thus, in addition to the plain language of the Agreement, the parties' conduct unquestionably demonstrates their intent to settle this case.

Romano argues that he "couldn't have made it anymore [sic] clear that he was not in agreement with the material terms defense counsel proposed." Pl.'s Resp. 2. But "in the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (quoting Metzger v. Aetna Ins., 227 N.Y. 411, 416 (1920)). Romano's decision to sign the Agreement indicates that he assented to the material terms Defendants proposed. Accordingly, unless Romano can show that he did not sign voluntarily, the Agreement constitutes a binding preliminary agreement and may be enforced.

### C. Voluntarily Entering the Agreement

Romano argues that defense counsel "attempted to force" him to sign the Agreement and thereby release his claims against Defendants. In the employment context, courts consider the "totality of the circumstances" in "determining whether a release is voluntary." Bormann v. AT&T Commc'ns, Inc., 875 F.2d 399, 403 (2d Cir. 1989). The following factors are relevant to that inquiry:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and

> 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Id. (quoting EEOC v. Am. Express Publ'g Corp., 681 F. Supp. 216, 219 (S.D.N.Y. 1988)). These "factors are not exhaustive and not every factor must be in defendant's favor for the release to be found knowing and voluntary; rather, all of the factors must be examined under the totality of the circumstances." Neal v. JPMorgan Chase Bank, N.A., No. 10-CV-1157 (JFB)(ETB), 2012 WL 3249477, at *9 (E.D.N.Y. Aug. 8, 2012).

First, Romano has a college education and worked as a branch manager in the banking industry for several years. Second Idrissa Aff. Ex. 1. His education and business experience both suggest that he was able to understand the Agreement and its implications.

Second, the amount of time Romano had access to the Agreement before signing it was fairly brief. The parties discussed the final settlement terms during the afternoon on December 6, 2017, and signed the Agreement shortly thereafter. First Idrissa Aff. ¶¶ 7–14. But Romano was familiar with Defendants' proposed settlement terms long before those final discussions and was fully aware that Defendants would not agree to a settlement unless he released his claims against them. See id. Exs. 1–3. Moreover, defense counsel's statements that she would seek dismissal of Romano's case if he did not arrive at his deposition by 1:45 p.m.—several hours after the scheduled start time—did not somehow suggest that defense counsel was pressuring or coercing Romano into signing an agreement right away. On the contrary, Romano was fully aware that his deposition needed to proceed on December 6, 2017—after repeatedly tolerating Romano's attempts to avoid being deposed, the Court had unequivocally warned Romano that his deposition would "not be rescheduled, postponed, or delayed" again. ECF No. 105. And throughout the morning and early afternoon on December 6, 2017, defense counsel continually

9

told Romano that the parties could proceed with his deposition first and discuss the terms of a settlement afterward. See First Idrissa Aff. Ex. 3.

Third, Romano played an active role in negotiating the terms of the Agreement. In the days and hours before he signed the Agreement, Romano requested various changes to the settlement terms and release of claims. Id. Moreover, during the afternoon on December 6, 2017, Romano proposed specific changes to the settlement terms, some of which were agreed to by Defendants and incorporated into the Agreement. First Idrissa Aff. ¶ 13. The mere fact that Defendants did not assent to all of the settlement terms Romano requested does not suggest that his decision to ultimately sign the Agreement was involuntary.

Fourth, the Agreement is drafted in clear, simple language that is easy to understand. Id. Ex. 4. The Agreement contains neither legal jargon nor the type of boilerplate legal provisions that Defendants included in previous versions of the settlement agreement and in the "more formal" settlement agreement that was later sent to Romano for review. Id. Exs. 2, 4–5.

Fifth, Romano was not represented by counsel and did not consult with counsel before signing the Agreement. This factor weighs against a finding that Romano voluntarily released his claims against Defendants. Nevertheless, Romano had represented himself on a pro se basis for at least a year and was thoroughly familiar with the litigation process and the implications of entering a settlement agreement.

Sixth, the Agreement provides that Romano will receive a significant settlement sum in exchange for the release of his claims against Defendants. Id. Ex. 4. Although it is difficult to predict whether Romano might have obtained a larger recovery at trial, it is clear that Romano has not yet established any contractual or legal entitlement to greater benefits.

On the whole, these factors strongly suggest that Romano was fully capable of entering a settlement agreement and was fully cognizant of the legal implications of doing so. Thus, I find that Romano voluntarily signed the Agreement and thereby released his claims against Defendants. I recommend granting Defendants' motion to enforce the Agreement.

## II.  Motions to Seal Defendants' Motion and Related Documents

"The common law right of public access to judicial documents is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). "To determine whether documents should be placed under seal, a court must balance the public's interest in access to judicial documents against the privacy interests of those resisting disclosure." Application of Utica Mut. Ins. v. INA Reinsurance Co., 468 F. App'x 37, 39 (2d Cir. 2012). "[W]here documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." Lugosch, 435 F.3d at 121.

"In addition to the common law right of access, it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" Id. at 120. Thus, a court must "consider (a) whether the documents 'have historically been open to the press and general public' . . . and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question.'" United States v. Erie County, 763 F.3d 235, 239 (2d Cir. 2014) (quoting Lugosch, 435 F.3d at 120). "Once a First Amendment right of access to judicial documents is found, the documents 'may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential

11

to preserve higher values and is narrowly tailored to serve that interest.'" Id. (quoting Lugosch, 435 F.3d at 120).

"Any document reflecting the terms of the settlement and submitted to the Court is a 'judicial document' to which the presumption of access likely applies." Xue Lian Lin v. Comprehensive Health Mgmt., Inc., No. 08-CV-6519 (PKC), 2009 WL 2223063, at *1 (S.D.N.Y. July 23, 2009). Similarly, "[d]ocuments created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access." Schiller v. City of New York, No. 04-CV-7921(KMK)(JC), 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006). Typically, settlement discussions and draft settlement agreements are not "presented to the court to invoke its powers or affect its decisions." Amodeo, 71 F.3d at 1050. Thus, in many cases, "the presumption of public access to settlement conferences, settlement proposals, and settlement conference statements is very low or nonexistent under either constitutional or common law principles." United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 855 (2d Cir. 1998). But when a party seeks "judicial ratification or rejection" of a settlement agreement, "the document sought to be acted upon by the judicial power will be placed on file and must become a public record." Id. at 857.

By filing their motion to enforce the Agreement, Defendants asked the Court to act upon that document and use its judicial power to effectuate it. The parties have also filed briefs and presented various communications and draft agreements to the Court in order to sway its decisions on the motion. The Court has been asked to rely upon these documents in determining the parties' substantive legal rights in this matter, and thus, a strong presumption of public access attaches. In addition, Defendants' only justification for sealing these documents is their own generalized desire to keep the Agreement private. Pl.'s Dec. 27, 2017 Letter. This is not enough

to overcome the strong presumption of public access. Accordingly, I DENY Defendants' motion to seal their motion to enforce the settlement agreement, the parties' briefs on the motion, and most of the supporting materials the parties have filed, including the Agreement itself.

Defendants have also provided the Court with an agreement that Romano previously entered with another former employer. Second Idrissa Aff. Ex. 2. Defendants apparently filed this document with the Court to demonstrate that Romano has prior experience with settlement negotiations. Df.'s Reply 7. But the document has little, if any, bearing on whether Romano voluntarily assented to the Agreement in this case. Moreover, the document contemplates that its terms will be kept confidential. Second Idrissa Aff. Ex. 2 ¶ 4. That confidentiality language appears to be aimed, at least in part, at protecting the interests of Romano's former employer, which is not a party in this case. Public disclosure of the agreement would provide the public with negligible insight into the reasoning behind the Court's decision and would threaten the privacy interests of a third party. Therefore, this document shall be redacted in Defendants' filings. Enforcement of this order regarding the motion to seal is stayed pending Chief Judge McMahon's final decision on Defendants' motion to enforce the Agreement.

## CONCLUSION

For the foregoing reasons, I recommend granting Defendants' motion to enforce the Agreement, ordering Defendants to pay Romano the agreed-upon settlement sum minus reasonable attorneys' fees and costs Defendants incurred enforcing the Agreement, and dismissing this case in its entirety with prejudice. In addition, I direct that the motion to enforce the Agreement, the parties' briefs, and all of the supporting materials, except for the agreement

13

Romano entered with another former employer, be publicly filed on ECF after Chief Judge McMahon issues a final decision on Defendants' motion to enforce the Agreement.

_____
SARAH NETBURN
United States Magistrate Judge

DATED: June 4, 2018
New York, New York

cc: Robert Romano (*by Chambers*)
1 Jefferson Avenue, Apt G11
Rockville Centre, NY 11570

\* \* \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Chief Judge McMahon. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).